IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| L. DWAINE LORD, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 3:02-CV-1636-P |
| | § | |
| DAVID LARSEN, and | § | |
| CITY OF DALLAS, TEXAS, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is Defendant City of Dallas, Texas's ("Defendant" or "City") Motion for Summary Judgment, filed July 7, 2004.¹ Plaintiff L. Dwaine Lord ("Plaintiff") filed his Response, which included a Cross-Motion for Summary Judgment on April 14, 2005, and Defendant filed a Reply on May 17, 2005.² After considering the parties' arguments and briefing, and the applicable law, the Court DENIES Defendant's Motion for Summary Judgment, and DENIES Plaintiff's Cross-Motion for Summary Judgment.³

---

¹ Originally, Plaintiff filed a Response on August 2, 2004, and Defendant filed a Reply on August 17, 2004. However, on October 6, 2004, Magistrate Judge Paul D. Stickney reopened discovery for three months until January 5, 2005, allowing Plaintiff to submit a supplemental response to Defendant's Motion for Summary Judgment by January 7, 2005. Subsequent orders from this Court extended the deadline to April 15, 2005.

² Additionally, Defendant submitted Objections to Plaintiff's Appendix in Support of Plaintiff's Response to David Larsen and the City of Dallas' Motions for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment ("Defendant's Objections") on May 17, 2005. Among other contentions, Defendant's Objections request that the Court strike Plaintiff's Cross Motion for Summary Judgment because "Plaintiff's Motion is untimely." Def.'s Objections at 2. However, the facts of this case do not warrant summary judgment for either party. Defendant's Objections argue further that several declarations, affidavits, and the Independent Investigative Panel Report should be stricken. To the extent needed, the Court overrules these objections, and finds any other objections moot.

³ On July 28, 2005, the Court denied Defendant David Larsen's Motion for Summary Judgment, and denied Plaintiff's Cross Motion for Summary Judgment.

**Order DENYING Motion for Summary Judgment, and DENYING Plaintiff's Cross-Motion for Summary Judgment**
3:02-CV-1636-P
Page 1

I.      **Background and Procedural History**

On January 11, 2002, City narcotics officer David Larsen ("Larsen") submitted an affidavit for a search and arrest warrant ("warrant") for Plaintiff's residence. Larsen based his information in the affidavit on the testimony of a confidential informant ("CI"), later revealed to be Mary Deal ("Deal"). Although Larsen and other City narcotics officers executed the warrant successfully, they failed to discover any illegal narcotics during the search. Plaintiff believes Larsen obtained the warrant unlawfully by intentionally misrepresenting facts to establish probable cause.

Plaintiff now alleges City should be liable for the actions of Larsen because City failed to properly supervise Larsen and other City narcotics officers in utilizing confidential informants in obtaining valid warrants.

II.     **Summary Judgment Standard**

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial, and of identifying those portions of the record that demonstrate such an absence. *Celotex*, 477 U.S. at 323.

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party defending against the motion for summary judgment cannot defeat the motion unless she provides specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Id.* at 248-50; *Abbott v. Equity Group*, 2 F.3d 613, 619 (5th Cir. 1993). In other words, conclusory statements, speculation and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to her case, and on which she bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

Finally, the Court has no duty to search the record for triable issues. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." *Id.* A party may not rely upon "unsubstantiated assertions" as competent summary judgment evidence. *Id*.

### III. Plaintiff's Claims Against City

Plaintiff asserts that City should be held liable because of an unconstitutional policy or custom. To wit, Plaintiff argues City failed to adequately supervise Larsen and other City narcotics officers.

It must be noted from the outset that municipalities may not be held liable under theories of respondeat superior or vicarious liability. *Scott v. Moore*, 85 F.3d 230, 233 (5th Cir. 1996) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-94). "In other words, to hold a municipality liable, a plaintiff must show that his constitutional deprivation was caused by the county's adoption of or failure to adopt a particular policy, and that such action went beyond mere negligent protection of the plaintiff's constitutional rights." *Goldman v. Dallas County*, 1999 WL 172316, at *4 (N.D. Tex. Mar. 23, 1999) (internal citations omitted). "In sum, proper analysis of a § 1983 claim against a municipality requires three determinations." *Moore*, 85 F.3d at 233. First, the court must decide whether the municipality promulgated an official policy or custom that could subject it to § 1983 liability. *Id.* (quoting *Monell*, 436 U.S. at 690-94). Second, the court must decide whether the "policy can be linked to a constitutional violation." *Id.* Finally, the court must determine whether the municipality's action, or lack thereof, "extended beyond mere negligent oversight of the plaintiff's constitutional rights." *Id.*

    a.    **Unconstitutional Policy or Custom**

In addressing an unconstitutional policy or custom, the Court must not only determine *what* custom or activity is at issue, and whether such activity rises to the level of municipal liability, but also whether any individual with final policy making authority established those patterns.

    1.    **Failure to Supervise**

A custom or policy under § 1983 is shown by evidence of "a pattern of similar incidents in which citizens were injured or endangered by intentional or negligent policy misconduct

and/or that serious incompetence or misbehavior was general or widespread through the police force" *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992) (internal citations omitted). Such a custom need not receive "formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 691. Indeed, "[e]vidence of official policy may be established either formally or informally." Pl.'s Resp. at 36. The latter consists of "a persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and so well settled as to constitute a custom that fairly represents municipal policy." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

In this case, Plaintiff provides sufficient evidence of a failure to supervise City narcotics officers and their dealings with confidential informants and warrants. Among other items, Plaintiff proffers: (1) the four indictments against Larsen; (2) the refusal to testify by David Larsen, Terrell Bolton, John Martinez, William Turnage, Jack Gouge, and Bruce McDonald, on grounds of possible self incrimination;[4] and (3) "The Independent Investigative Panel Report," (the "Report") subtitled the "Report of the Independent Investigative Panel on the 'Fake Drug Cases' Involving the City of Dallas Police Department." Although the Report focuses the bulk of its attention on other City officers, it does mention Larsen, and talks explicitly of patterns which closely resemble the facts of this case, including the failure of officers to search the CI prior to a drug buy, and the possible planting of fake drugs. *Compare* Report at 24-25; 31-37 (Pl.'s App. at 418-19; 425-31) *with* Deal Decl. at 2; 3 (Pl.'s App. at 194; 195).

---

[4] While silence does not correspond to automatic admission, it may provide an adverse inference. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.").

Moreover, Plaintiff proffers the affidavit of Dora Saucedo-Falls ("Saucedo-Falls"), who served as an Assistant Police Chief for City from 1999 through 2004. Saucedo-Falls Aff. at 1 (Pl.'s App. at 687). Not only does Saucedo-Falls corroborate many items contained in the Report, but she asserts that former Police Chief Terrell Bolton knew of the problems regarding the narcotics department and the confidential informants.

The City insists that the fake drug investigation concerning the Dallas Police Department's Narcotics division is not relevant to this case. The court disagrees. If plaintiff's summary judgment evidence is believed, as it must be at this stage of the case, the fake drug cases stem from the same problem alleged in the instant law suit; the City's alleged failure to properly supervise narcotics police officers and the officers' use of confidential informants. Plaintiff has presented summary judgment evidence regarding defendant Larsen's knowledge of planting fake drugs and of Larsen's knowledge of the unreliability of the informant he used to obtain the warrant to search plaintiff's home. Plaintiff also presents evidence that the then chief of police knew of the deficiencies regarding supervision of narcotics officers and confidential informants and knew of the surfacing fake drug problems. However, the evidence indicates the then chief of police ignored, and may have attempted to cover up, the problems and refused to make necessary changes. Taken together, plaintiff's evidence of abuses by narcotics officers, apparently connected by a failure to properly supervise, is sufficient to create a fact issue as to whether the problems were sufficiently widespread and known by policy makers as to constitute a custom. After viewing all evidence in the light most favorable to the Plaintiff, the court

determines sufficient evidence exists as to whether the City failed to properly supervise Larsen and the narcotics department and the officers' use of confidential informants.

### 2. Final Policy Making Authority

In order to decide whether the City promulgated an official policy or custom, the Court must decide first *which* City officials may even establish such patterns. Plaintiff contends that City acted through its Chief of Police ("Chief") to develop and maintain official policies and customs that exhibited "deliberate indifference to the constitutional rights of persons in Dallas, Texas." Pl.'s Comp. at 11 ¶ 31. According to the United States Supreme Court in *Monell*, a municipality is liable under § 1983 only when its official policy or custom, "made by its lawmakers or by those whose edicts or acts may fairly be said to represent *official policy*," causes a deprivation of a federally protected right. *Monell*, 436 U.S. at 694 (emphasis added). Conversely, a municipality is not liable when official policy or custom rests on a sole individual unless that official is "responsible for establishing final government policy respecting such activity." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986); *see also Worsham v. City of Pasadena*, 881 F.2d 1336, 140 (5th Cir. 1989). Moreover, "whether an official [has] final policy making authority is a question of state law." *Pembaur*, 475 U.S. at 483.

Chapter III of the Dallas City Charter states that "[e]xcept as otherwise provided by this Charter, all powers conferred on the city shall be exercised by a City Council." App. to Def. City of Dallas, Texas' Mot. for Summ. J., Vol. I, at p. 2, Dallas City Charter ("City Charter"), Chapter III, Sec.1. However, Chapter XII, Sec. 2(1) states that the Chief shall:

> have immediate direction and control of the police department, subject to the supervision of the city manager, and also [be] subject to such rules, regulations, and orders as the city manager may prescribe, not inconsistent with the

> ordinances of the city, *and shall promulgate all orders, rules, and regulations for the government of the police force.*

City Charter Chapter XII, Sec. 2(1) (emphasis added).  While City intimates that no individual—other than the City Manager—possesses final policy making authority, the Court finds that a fact question exists regarding final policy making authority in this case.  Clearly, the City Charter provision set forth above delegates some authority to the chief of police to promulgate all orders and rules for the government of the police department.  Generally, the chief of police exercises this authority through the promulgation of General Orders and Standard Operating Procedures that govern police officer conduct.  Although another part of this provision states that the chief of police is subject to the supervision of the city manager, it is unclear whether the chief's authority to promulgate orders and rules for the government of the police force is subject to the supervision of the city manager.  Further, it is unclear whether the chief's responsibility to put in place procedures and guidelines to ensure that the orders and rules are followed is subject to the supervision of the city manager or is something that has been delegated solely to the chief of police.  Lastly, it is unclear whether the chief's responsibility for promulgating rules and procedures for narcotics officers' use of confidential informants and putting safeguards in place to ensure the procedures are followed is subject to the supervision of the city manager.  Although the full extent of delegation to the chief of police remains unknown, all questions of fact must be resolved in favor of the Plaintiff at this stage.  Unfortunately, neither the City nor Plaintiff offer any affidavits, depositions, or documents which explain the

situation further.[5]  Due to the ambiguous nature of Chapter XII, Sec. 2(1) and the lack of evidence presented, an issue of fact exists as to whether the chief of police possesses final policy making authority with respect to policies and procedures in the use of confidential informants by City narcotics officers.  *Pembaur v. City of Cincinnati*, 475 U.S. 469,483 (1986) (stating that a municipality may be liable when the alleged improper custom rests on an official who is "responsible for establishing final government policy respecting such activity").  Stated another way, there is a fact issue as to whether the edicts, actions, and inactions, of the chief of police in this case "may fairly be said to represent official policy."  *Monell*, 434 U.S. at 694.

The court further finds that the evidence also creates a fact issue as to whether the City acted with deliberate indifference and whether the failure to properly supervise was the moving force behind plaintiff's alleged constitutional injury.

### IV. Conclusion

For the foregoing reasons, the Court DENIES Defendant's Motion for Summary Judgment, and DENIES Plaintiff's Cross-Motion for Summary Judgment.

**It is so ordered.**

Signed this 24th day of August 2005.

*/s/ Jorge A. Solis*
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE

---

[5] Neither party addresses this issue adequately.  Plaintiff provides scant evidence whether the chief of police establishes the policy governing the use of confidential informants by City narcotics officers . Indeed, Plaintiff relies primarily on argument and conclusory assertions that the chief has been delegated certain authority.  The City relies on the broad wording of the City Charter without discussing the Charter's application to the specific exercise of authority at issue in this case and without presenting any evidence.